IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEREMY LINDSEY,

    *Petitioner,*

vs.

    Case No. 20-3016-EFM

DAN SCHNURR,

    *Respondent.*

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Jeremy Lindsey's Petition for Writ of Habeas Corpus (Doc. 1). Lindsey seeks relief on the basis that he was denied effective assistance of counsel due to irreconcilable conflicts between himself and his trial counsel. For the reasons discussed below, the Court denies Lindsey's petition.

### I.    Factual and Procedural Background

In September 2014, Lindsey was charged in Kansas state court with three counts of rape; two counts of aggravated battery; and one count each of aggravated kidnapping, aggravated burglary, aggravated endangering a child, unlawful administration of a substance, and criminal damage to property. Shortly thereafter, Lindsey's first appointed attorney entered his appearance. Less than one month later, that attorney filed a motion to withdraw due to a lack of trust and

communication, and a complete breakdown in the attorney-client relationship. The trial court granted the motion to withdraw and appointed Lindsey new counsel.

By March 2015, Lindsey's second appointed attorney had also moved to withdraw, asserting that Lindsey intended to represent himself. After time to confer at the hearing on the motion, Lindsey elected to have counsel continue to represent him. But, two months later, the attorney again filed a motion to withdraw, this time citing a request by Lindsey and a deterioration of the attorney-client relationship that had made it impossible for him to provide Lindsey effective assistance of counsel. Lindsey also filed a pro se motion to dismiss his counsel. At the hearing on the motions, defense counsel stated that Lindsey insisted that he had the right to decide every issue in his case. The trial court expressed concern that Lindsey had trouble listening and getting angry, and that no attorney would be able to represent Lindsey, but nonetheless granted the motion.

In June 2015, Lindsey was appointed his third attorney. By August, Lindsey filed a pro se motion to dismiss his counsel, which he subsequently withdrew. Later that month, however, Lindsey informed the trial court that he wished to represent himself during a motions hearing. The trial court granted the motion and appointed his third attorney as stand-by counsel. After representing himself for part of the hearing, Lindsey moved to have counsel again represent him, and his third attorney was reappointed. A few days later, Lindsey's third counsel moved to withdraw, citing that Lindsey had discharged him and that there had been a complete breakdown in communication. At the hearing on the motion, Lindsey and his attorney both stated that there had been many disagreements regarding whether to file and argue pretrial motions and Lindsey asserted that the attorney had refused to subpoena a witness that could provide exculpatory evidence. The trial court again granted Lindsey's motion.

In September 2015, Lindsey's fourth attorney—his final trial counsel—was appointed. Two months later, his counsel moved to withdraw, asserting a deterioration in the attorney-client relationship and that Lindsey had requested that he withdraw. The trial court's denial of the motion to withdraw is largely the basis for Lindsey's claim that he was denied effective assistance of counsel.

At the hearing on the motion, Lindsey's attorney stated that Lindsey had demanded that he relitigate prior district court rulings and obtain an expert witness, but that Lindsey also refused to waive his speedy trial rights so that his attorney could do so. He also disclosed that Lindsey reported that he had an alibi but refused to turn over the alibi witness's information. He stated that these disagreements made him question is his ability to be effective counsel for Lindsey and had created such a hostile and argumentative relationship that he did not believe he could continue as Lindsey's counsel. Lindsey declined to make any statements regarding the motion to withdraw.

In denying the motion, the trial court noted Lindsey's history with other appointed counsel and that he had established a pattern of consistently refusing to communicate with his attorneys. The trial court concluded that Lindsey's refusal to inform his attorney of his alibi witness's information was unreasonable and that Lindsey did not have justifiable dissatisfaction with his counsel. Thus, Lindsey proceeded to trial with his fourth appointed attorney continuing to serve as his counsel.

It does not appear from the record that any additional issues between Lindsey and his counsel were brought to the attention of the trial court until trial. At trial, a disagreement arose between Lindsey and his counsel during the prosecution's examination of an FBI witness. During the examination, Lindsey and his counsel engaged in a "[l]oud off-the-record discussion." At that

time, the trial court interrupted the prosecutor to notify Lindsey's trial counsel that she could hear him, at which point Lindsey requested a break.

After the jury and prosecutors were excused from the courtroom, Lindsey explained to the trial court that he felt that his attorney-client relationship was deteriorating based on a disagreement with his attorney about the questions to be asked of certain witnesses. He also stated that his trial counsel made statements to him that he did not appreciate and "which turned the heads of the jury." He expressed concern that his case could be prejudiced by the jury seeing he and his attorney arguing. He asked that it be noted for the record that there was a breakdown in communication with his attorney and that he was not satisfied. The trial court discussed these issues with Lindsey and his trial counsel, and Lindsey's counsel agreed to recall a witness to ask additional questions. The trial court then asked Lindsey if that was what he wanted, to which Lindsey replied that was all he asked. The jury and prosecutors were then brought back into the courtroom and the trial continued. Lindsey was eventually convicted by jury on all charges.

Lindsey now argues that he was denied the right to effective assistance of counsel at trial due to irreconcilable conflict between himself and his trial counsel.

## II.     Legal Standard

The Court's review of Lindsey's habeas motion is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.[1] Pursuant to 28 U.S.C. § 2254(d)(1) and (2), a court may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citation omitted).

determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]

The United States Supreme Court has held that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases" or if the state court decides a case differently than the Supreme Court has "on a set of materially indistinguishable facts."[3] A state court decision is based on an unreasonable application of the facts if "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case."[4]

Additionally, Lindsey's petition was filed pro se. Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[5] A pro se litigant is entitled to a liberal construction of his pleadings.[6] It is not the proper role of a district court, however, to "assume the role of advocate for the pro se litigant."[7]

### III.     Exhaustion

Prior to ruling on the merits of a petitioner's claims, courts must first determine if the petitioner exhausted claims at the state level. "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the

---

[2] *Holland v. Allbaugh*, 824 F.3d 1222, 1227 (10th Cir. 2016) (citations omitted).

[3] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

[4] *Id.* (citation omitted).

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[6] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

conviction or in a postconviction attack."[8] " 'Fair presentation' means that the petitioner has raised the 'substance' of the federal claim in state court," not that the petitioner cited "book and verse on the federal constitution."[9]

In the instant case, Lindsey filed a direct appeal, raising the same ineffective assistance of counsel claim now raised in his federal habeas motion. The Kansas Court of Appeals affirmed the conviction, and the Kansas Supreme Court denied review. Lindsey has therefore exhausted his claim at the state level.

### IV.   Analysis

Lindsey claims that he was denied effective assistance of counsel due to an irreconcilable conflict between himself and his trial counsel. He further asserts that this conflict prejudiced him at trial due to the conflict culminating in an argument between himself and his trial counsel in front of the jury. Finally, he argues that in analyzing these issues on appeal, the Kansas Court of Appeals erred in applying the wrong legal standard, making an unreasonable application of clearly established federal law, and making an unreasonable factual determination in light of the evidence presented.

**A.   The Denial of Lindsey's Counsel's Motion to Withdraw Does Not Warrant Habeas Relief.**

On appeal, Lindsey first argued that the district court improperly determined that Lindsey did not have justifiable dissatisfaction with his counsel. Lindsey asserted that because he had not requested a new attorney—but rather his attorney had moved to withdraw—the justifiable

---

[8] *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citations omitted); *see also* 28 U.S.C. § 2254(b).

[9] *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citations omitted).

dissatisfaction standard was irrelevant. Thus, Lindsey argued that the trial court had committed both legal and factual error. The Kansas Court of Appeals affirmed the trial court's decision. Lindsey now argues that the Kansas Court of Appeals' decision failed to comply with federal precedent.

As noted by the Kansas Court of Appeals, however, the record reflects that Lindsey had requested that his attorney withdraw. Thus, the trial court's use of the justifiable dissatisfaction standard—which conforms to federal precedent—was appropriate.[10] Further, the Kansas Court of Appeals concluded that Lindsey's history of being angry and refusing to communicate with counsel, his refusal to waive his speedy trial right despite demanding that his attorney relitigate prior district court rulings and obtain an expert witness, and his refusal to provide his attorney with his alibi witness's information all demonstrated that he had unreasonably contributed to the breakdown in communication. This analysis is consistent with federal precedent that a defendant is not entitled to substitution of counsel where he "substantially and unreasonably contributed to the breakdown in communications."[11] Lindsey is therefore not entitled to habeas relief on this ground.

---

[10] *Compare United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) ("To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.") (citation omitted) *with State v. Lindsey*, 2018 WL 4655960, at *5–6 (Kan. Ct. App. 2018) (concluding that Lindsey did not show justifiable dissatisfaction and citing *State v. Staten*, 304 Kan. 957, 377 P.3d 427, 437 (2016), which holds that justifiable dissatisfaction "may be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant.").

[11] *See United States v. Williamson*, 859 F.3d 843, 860 (10th Cir. 2017) (citations omitted).

**B.      Lindsey and His Counsel's Disagreement During Trial Does Not Warrant Habeas Relief.**

Lindsey also argues that an actual conflict of interest arose when his counsel purportedly used profanity towards him during the prosecution's examination of an FBI witness at trial. Lindsey argues that this interaction warranted a mistrial but, because a request for a mistrial would require his attorney to admit his own improper statement, a conflict between Lindsey's interests and his trial counsel's interests arose.

Again, however, the assertions made by Lindsey are not supported by the record. Although Lindsey asserts that his counsel "cursed him out" in front of the jury, as noted by the Kansas Court of Appeals, the record does not contain any information regarding what Lindsey or his counsel said in the off-the-record discussion during the FBI witness's examination, nor what the jury heard. The record instead indicates that at the time of the disagreement, Lindsey expressed concern that that his case could be prejudiced by the jury seeing he and his attorney arguing—not that his attorney had used profanity.[12]

Moreover, Lindsey explained to the trial court that he felt that his attorney-client relationship was deteriorating based on a disagreement about questions to be asked of witnesses. After discussing these concerns with the trial court, Lindsey indicated that he would be satisfied by his attorney recalling a specific witness to ask the questions Lindsey wanted asked. Because the burden rests on the defendant "to show specific facts to support his allegation of an actual conflict adverse to his interests,"[13] the Kansas Court of Appeals reasonably applied the law to the

---

[12] It was only at the post-trial motions stage that Lindsey stated that his trial counsel had "cursed [him] out" in front of the jury.

[13] *Williamson*, 859 F.3d at 853 (citation omitted).

facts when it determined that the record did not support Lindsey's argument that a prejudicial conflict of interest arose at trial.

## V.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."[14] A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[15]

Here, the Court concludes that it should not issue a certificate of appealability.  Nothing suggests that the Court's rulings in this case are debatable or incorrect, and no record authority suggests that the Tenth Circuit would resolve this case differently.  The Court thus declines to issue a certificate of appealability.  In doing so, the Court notes that Lindsey may not appeal the Court's denial of a certificate, but he may seek a certificate of appealability from the Tenth Circuit.[16]

---

[14] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1)(A).

[15] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[16] *See* Rules Governing Section 2254 Cases, Rule 11(a).

**IT IS THEREFORE ORDERED** Lindsey's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 9th day of June, 2022.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE